(1 P.3d 924)

No. 83,191

DAVID STAFFORD and MARCIA STAFFORD, *Appellees*, v. STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant.*

Opinion
filed March 17, 2000.

*M. Doug Bell,* of Hall, Levy, DeVore, Bell, Ott & Kritz, of Coffeyville, for
appellant.

*Scott Gallagher, Roger A. Johnson,* and *Alison R. Bunch,* of Hershewe & Gulick,
P.C., of Joplin, Missouri, for appellees.

Before GERNON, P.J., GREEN, J., and DAVID PRAGER, Chief Jus-
tice Retired, assigned.

GERNON, J.: State Farm Mutual Automobile Insurance Com-
pany (State Farm) appeals the summary judgment decision award-
ing the Staffords $50,000 in underinsured motorist benefits.

Donnie Stafford was a passenger in an automobile driven by
Colton Morris, which collided with a vehicle driven by Jeffrey
Hight. Tragically, Stafford was killed. Both drivers were driving
under the influence of alcohol.

The Staffords brought a wrongful death action and settled with
Morris' insurance carrier for $25,000, Morris' liability limit. The
Staffords also settled with Hight's insurance carrier for $25,000,
Hight's liability limit.

Claiming damages over $400,000, the Staffords sought recovery
from State Farm against the underinsured motorist provision in
their automobile insurance policy. The Staffords' policy provided

$50,000 per person limit for uninsured/underinsured liability coverage.

The parties agreed to submit the matter to the court on stipulated facts, seeking only a legal determination as to how much of the $50,000 the Staffords were entitled to recover. Both parties submitted motions for summary judgment. Following a hearing, the trial court granted the Staffords' motion and ordered State Farm to pay $50,000 to the Staffords. State Farm appeals.

The Staffords' automobile insurance policy from State Farm contains the following clause:

"2.    If the *uninsured motor vehicle* is an 'underinsured' land motor vehicle under the definition of *uninsured motor vehicle*:

. . . .

"b.    The maximum total amount payable to all *insureds* is the difference between the 'each accident' limit of liability of this coverage and the amount paid to all *insureds* by or for any *person* or organization who is or may be held legally liable for the *bodily injuries.*

"Subject to the above, the most we pay any one *insured* is the lesser of:

(1)    the difference between the 'each person' limit of liability of this coverage and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury*; or

(2)    the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury.*"

State Farm argues that this clause limits the Staffords' recovery to $25,000. According to State Farm's calculation, the Staffords should receive the difference between their $50,000 underinsured motorist coverage limit and the $25,000 policy limits of the tortfeasors' insurance.

The Staffords, on the other hand, argue that this clause violates K.S.A. 40-284 by limiting or diluting the unqualified underinsured motorist coverage that is required. The Staffords claim that the underinsured motorist payments should be calculated separately for each tortfeasor.

Using the Staffords' calculation method, the court must compare the amount of damages each tortfeasor owed to the Staffords, the per person limit of the Staffords' underinsured motorist coverage, and the value of liability insurance available from the tortfeasor. If

the tortfeasor's liability exceeded his insurance coverage, then State Farm must pay the difference between the Staffords' underinsured motorist coverage limit and the amount received on behalf of the tortfeasor. Based on the parties' agreement that the Staffords would recover damages in excess of $100,000, the calculation for Morris provides a payment of $25,000—$50,000 of underinsured motorist coverage minus the $25,000 received from Morris' insurance. The same calculation applies to Hight, whose insurance also paid $25,000. These calculations provide a net payment of $50,000.

State Farm frames the issue as whether the district court properly interpreted the language of the Staffords' insurance policy. The district court did not provide any interpretation of the policy language. It merely granted the Staffords' motion for summary judgment and ordered State Farm to pay them without providing any reasoning for its decision. Thus, the question is whether the district court properly granted summary judgment in favor of the Staffords.

Summary judgment is proper when only questions of law are presented. *American Home Life Ins. Co. v. Board of Shawnee County Comm'rs*, 22 Kan. App. 2d 18, 22, 913 P.2d 1211, *rev. denied* 258 Kan. 857 (1995). In this case, the only question involves the interpretation of K.S.A. 40-284. The interpretation of a statute is a question of law over which this court has plenary review. 22 Kan. App. 2d at 22.

In *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 733, 811 P.2d 1112 (1991), the Kansas Supreme Court interpreted K.S.A. 40-284 and held that State Farm's underinsured motorist limitation clause violates that statute because it attempts to limit the mandated underinsured motorist coverage and is not listed within the exclusions or limitations of coverage permitted at K.S.A. 40-284(e). The underinsured motorist clause invalidated by *Allied* is the same clause in question in this case. See 248 Kan. at 725.

In addition, the *Allied* court determined that the "individual policies should be compared separately with the underinsured motorist coverage." 248 Kan. at 732. This determination was based on the singular language of the statute, which refers to the "owner or operator" when referring to the driver of the other vehicle. It is

also supported by the comparative fault statute which abolished joint and several liability in Kansas. 248 Kan. at 732.

State Farm attempts to distinguish *Allied* by claiming that the language supporting the Staffords' calculation method is only dicta and by highlighting the fact that one of the tortfeasors was not underinsured. *Allied* cannot be distinguished in this way.

The facts in *Allied* are very similar to the facts in this case. In *Allied*, the insured seeking recovery from his underinsured motorist coverage had been severely injured in a three-car accident. The accident occurred when one vehicle ran a stop sign and hit another vehicle, forcing it to collide with the insured's car. The insured's damages were adjudged to be $200,000, with 90% being attributed to the driver who ran the stop sign and 10% being attributed to the driver who hit the insured's car. The 10% tortfeasor and his insurance company settled with the insured for $20,000. The 90% tortfeasor and his insurance company paid the insured $60,000, the liability limit of the tortfeasor's insurance coverage.

In *Allied*, the insured's policy with State Farm provided a $100,000 per person limit for underinsured motorist coverage. After determining that the underinsured motorist coverage should be compared separately with each tortfeasor's insurance, the Kansas Supreme Court held that the insured was entitled to $40,000 of underinsured motorist payments. In making this determination, the court held that State Farm's limitation on recovery violated K.S.A. 40-284 and refused to consider the $20,000 the insured had received from the 10% tortfeasor. 248 Kan. at 733.

Contrary to State Farm's assertion, the *Allied* court's decision did not turn on the fact that the 10% tortfeasor was fully insured. If the court had applied State Farm's limitation clause, that fact would have been immaterial. Instead, the court stated:

"The setoff provision here attempts to limit the underinsured motorist coverage mandated by 40-284 by deducting the amount received from other persons or organizations who may be legally liable for the bodily injury *regardless of whether they trigger the underinsured motorist coverage at issue in this case.* Such a setoff provision is not listed within the exclusions or limitations of coverage found at 40-284(e). Therefore this limitation is void and unenforceable." 248 Kan. at 733. (Emphasis added.)

In calculating the $40,000 award to the insured, the *Allied* court stated:

"Pursuant to K.S.A. 1990 Supp. 40-284(b), the State Farm Mutual policy was required as a minimum coverage to provide the amount of damages for bodily injury or death that [the insured] was legally entitled to receive from [the 90% tortfeasor] ($180,000) to the extent that State Farm coverage ($100,000) exceeds the limits of the bodily injury coverage carried by [the 90% tortfeasor] ($60,000). This statute requires State Farm Mutual to provide the underinsured motorist coverage of no less than the difference between [the insured's] policy limits of $100,000 and [the 90% tortfeasor's] policy limits of $60,000. Here, the difference is $40,000." 248 Kan. at 733.

The calculation method applied in determining the underinsured motorist payments in *Allied* is applicable in this case. For Morris' liability, State Farm must pay the difference between the Staffords' underinsured motorist coverage limit of $50,000 and Morris' liability limit of $25,000, producing a payment of $25,000. The same calculation applies to Hight's liability. These two underinsured motorist payments of $25,000 each total $50,000.

Furthermore, the calculation asserted by State Farm does not comply with the requirements of its own limitation clause. The clause limits underinsured motorist coverage to the difference between the amount of the insured's liability limit and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury. In this case, two tortfeasors could be held legally liable. Each tortfeasor's insurance company paid $25,000 to the Staffords. According to State Farm's limitation clause, the Staffords would receive nothing ($50,000-$25,000-$25,000=$0).

Affirmed.

GREEN, J., dissenting: What divides this panel is a difference in interpretation of the holding in *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 811 P.2d 1112 (1991). In applying the *Allied* calculation method to this case, the majority stated:

"The calculation method applied in determining the underinsured motorist payments in *Allied* is applicable in this case. For Morris' liability, State Farm must pay the difference between the Staffords' underinsured motorist coverage limit of $50,000 and Morris' liability limit of $25,000, producing a payment of $25,000.

The same calculation applies to Hight's liability. These two underinsured motorist payments of $25,000 each total $50,000."

Under the majority's calculation method, underinsured motorist coverage would fluctuate, depending on the number of tortfeasor drivers involved in an accident. For example, in the above calculation, the Staffords' underinsured motorist coverage increased because two tortfeasor drivers were involved in the accident. On the other hand, if only one tortfeasor driver, with minimum liability limits of $25,000, was involved in the death of their son, the Staffords could only collect $25,000 from their carrier's underinsured motorist coverage. As a result, I do not believe that *Allied* allows the Staffords to collect twice from their carrier's underinsured motorist coverage.

To support my position, K.S.A. 40-284(d) prohibits the stacking of underinsured motorist coverages. Moreover in, *Eidemiller v. State Farm Mut. Auto. Ins. Co.*, 261 Kan. 711, 721, 933 P.2d 748 (1997), our Supreme Court determined that the failure to include an anti-stacking provision in a policy does not constitute a waiver of statutory prohibition against stacking. K.S.A. 40-284(d) and *Eidemiller* clearly state that although an insured may have access to multiple coverages, the insured can only collect once. This rule is applicable even when the insured's loss is not fully compensated.

Nevertheless, the majority's holding would allow underinsured motorists to do indirectly what they cannot do directly—stacking underinsured motorist coverages. To accomplish this modified form of stacking, the underinsured motorists would have to be involved in an accident with two or more tortfeasor drivers and would have to have underinsured motorist coverage and damages exceeding the liability coverage of each of the tortfeasors. I believe this method of allowing additional underinsured motorist coverage in these situations is wrong and not supported by K.S.A. 40-284(b).

As a result, I would limit the Staffords to collecting only once under their underinsured motorist coverage. I realize the position I take seems harsh. Nevertheless, because stacking of underinsured motorist coverages is prohibited by our legislature, insureds could protect themselves from incurring a loss exceeding their current

policy limits by purchasing additional underinsured motorist insurance. Finally, I realize that no amount of insurance coverage could compensate the Staffords for the unfortunate loss of their son.