NOT DESIGNATED FOR PUBLICATION

No. 115,413

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARK S. SELLENS,
*Appellant*,

v.

FARMERS INSURANCE CO., INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed October 21, 2016. Affirmed.

*LJ Leatherman* and *Nicole M. Revenaugh*, of Palmer, Leatherman, White, Girard & Van Dyk, L.L.P., of Topeka, for appellant.

*Derek H. MacKay*, of Brown & James, P.C., of Kansas City, Missouri, and *Timothy J. Wolf*, of the same firm, St. Louis, Missouri, for appellee.

Before GREEN, P.J., MCANANY and STANDRIDGE, JJ.

*Per Curiam*: Mark S. Sellens sued his insurance company, Farmers Insurance Co., Inc., claiming that Farmers failed to pay him under the underinsured motorist (UIM) provision of his automobile insurance policy. The district court granted summary judgment against Sellens, and this appeal followed. In our independent de novo review of Farmers' motion, we affirm, concluding that Farmers was entitled to judgment as a matter of law.

1

*Facts and Procedural History*

On August 28, 2013, Sellens was injured when a Chevrolet Suburban being driven by Jason Klotz turned left in front of Sellens' oncoming motorcycle. Klotz, the owner of the Suburban, was employed by Kansas Fire and Safety Equipment, Inc. (KFSE). The various insurance policies at play are as follows:

- Sellens was insured by Farmers under a policy that provided liability coverage and UIM coverage of $250,000 per person.

- Klotz was insured under a policy of auto liability insurance issued by State Farm Mutual Automobile Insurance Company with a $250,000 per person liability limit.

- KFSE had a Business Automobile policy with Liberty Mutual Insurance Co. which had liability limits of $100,000 per person.

The UIM provision of the Farmers' policy permitted Sellens to recover benefits for his injuries to the extent that his coverage limit of $250,000 exceeded the limits of bodily injury coverage carried by the owner or operator of the underinsured motor vehicle who caused the accident and Sellens' bodily injuries.

Liberty Mutual tendered its policy limit on behalf of KFSE. On December 20, 2013, Sellens provided Farmers with notice of Liberty Mutual's $100,000 tender and submitted a claim for UIM benefits under the Farmers policy. Farmers did not substitute its policy limits for the Liberty Mutual tender during the 60-day period prescribed by K.S.A. 40-284(f).

On March 7, 2014, Farmers denied Sellens' claim for UIM benefits.

2

On March 11, 2014, Sellens sued Klotz and KFSE in tort for their negligence in causing his injuries and damages. In his petition Sellens alleged that "Klotz was operating" the Chevrolet Suburban. He alleged that Klotz was negligent in failing to maintain proper control over his vehicle, in failing to maintain a proper lookout, in driving inattentively, and in failing to yield the right of way. Sellens alleged that Klotz was an agent of KFSE at the time of the accident and that KFSE was negligent in "hiring, retaining, training and supervising defendant Klotz." Sellens acknowledged in his petition that State Farm and Liberty Mutual had already tendered to him their respective policy limits of $250,000 and $100,000 but that Sellens had not yet accepted these tenders. Sellens ultimately accepted the policy limit offers of State Farm and Liberty Mutual.

On March 20, 2014, Sellens sent a copy of the petition to notify Farmers of the action. Apparently finding no exposure under the UIM provision of its policy and no anticipated subrogation interest to protect, Farmers did not intervene in the action.

On August 25, 2014, the matter was tried to the court without a jury. Prior to trial, Sellens dismissed his claims against Klotz and provided Klotz a full release. Sellens then proceeded to trial solely against KFSE. On that same day, the district court entered detailed findings and conclusions drafted by Sellens' counsel. The district court determined that at the time of the collision, "Kansas Fire and Safety Equipment, Inc., through its agent, Jason A. Klotz, was operating a 2005 Chevrolet Suburban SUV." The district court found that Sellens' damages "were directly and proximately caused by the negligence of [KFSE]." The court made no reference to or findings regarding Sellens' claims that KFSE was negligent in "hiring, retaining, training and supervising defendant Klotz." This left respondeat superior as the sole basis of KFSE's liability. The district court filled out a "verdict form" finding that KFSE was 100% at fault and finding Sellens' damages to be $1,720,995.52.

3

That same day, Sellens mailed the district court's findings and conclusions to Farmers and requested that Farmers issue the maximum available UIM payment of $150,000 to Sellens (that being the difference between the $100,000 tendered by Liberty Mutual on behalf of KFSE and the $250,000 limit on the Farmers' policy issued to Sellens). He also requested $60,000 for attorney fees pursuant to K.S.A. 40-908. Farmers did not respond.

On November 21, 2014, Sellens brought the current contract action against Farmers, claiming it breached its contract of insurance by not paying $150,000 in UIM benefits. Sellens also requested attorney fees under K.S.A. 40-908.

Farmers answered, denying that any UIM coverage was available to Sellens because Klotz' Suburban that struck Sellens' motorcycle was not an underinsured motor vehicle as that term is defined by K.S.A. 40-284(b) and by the Farmers' policy. Farmers noted that Sellens had "received payment of $350,000 by or on behalf of persons who may be legally responsible," which was more than Sellens' UIM $250,000 coverage under the Farmers' policy. Farmers filed a counterclaim for declaratory judgment, requesting that the court find that UIM coverage is not available to Sellens because: (1) under K.S.A. 40-284(b) and the express terms of the policy, the limits of the owner/operator's bodily injury coverage was not less than the UIM coverage under the Farmers' policy; (2) under the limits of liability portion of the policy, Farmers' UIM limits must be reduced by the $350,000 tendered by State Farm and Liberty Mutual on behalf of persons or organizations "who may be legally responsible"; and (3) Farmers does not owe Sellens any attorney fees.

The parties filed competing motions for summary judgment. On January 27, 2016, the district court granted Farmers' motion for summary judgment. Sellens appeals.

4

*Summary Judgment Standards*

Our review of Farmers' summary judgment motion is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). The parties are well acquainted with the standards for summary judgment. They are summarized in *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015):

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]"

*Klotz Was Operating the Chevrolet Suburban at the Time of the Accident*

The lynch-pin of Sellens' argument is the rather curious proposition that at the time of the accident, Klotz' Suburban was being operated by KFSE, not Klotz. He cites the district court's finding in the tort case that KFSE, through its agent Klotz, was operating the Suburban at the time of the accident. At the bench trial the only parties whose fault could be compared on the verdict form prepared by Sellens' counsel were KFSE and Sellens. The court found KFSE to be 100% at fault.

Sellens claims that in granting Farmers' motion for summary judgment, the district court erroneously considered Farmers' argument about KFSE's liability, which had

5

already been determined in the tort case. Because we are considering Farmers' summary judgment motion de novo, we do not concern ourselves with the rationale for the district court's ruling. We examine the matter anew to determine if Farmers has demonstrated that there remain no genuine issues of material fact and that it is entitled to judgment as a matter of law.

In considering Farmers' motion, Sellens, Farmers, and we are bound by the holding of KFSE's liability in the tort action. See *Guillan v. Watts*, 249 Kan. 606, Syl. ¶ 4, 822 P.2d 582 (1991); *Pickens v. Allstate Ins. Co.*, 17 Kan. App. 2d 670, Syl. ¶ 3, 843 P.2d 273 (1992). But this does not preclude consideration of the UIM provisions of the Farmers' policy and the provisions of K.S.A. 40-284(b).

Sellens asserts that in the tort action the district court found that KFSE, not Klotz, was operating the motor vehicle. The district court made no such finding. It appears that the district court simply found in the tort action that KFSE was vicariously liable under the doctrine of respondeat superior for the actions of its agent, Klotz, who was operating the Suburban at the time of the accident, as Sellens alleged in his petition. See *Jacobson v. Parrill*, 186 Kan. 467, 472-73, 351 P.2d 194 (1960).

It was Klotz, the operator of the Suburban, who turned into the path of Sellens' motorcycle. In recognition of this fact, Sellens received $250,000 from State Farm on behalf of Klotz.

In response to paragraph 2 of Farmers' statement of uncontroverted facts in connection with the present summary judgment motion, Sellens does not controvert Farmers' statement that Klotz was *operating* the motor vehicle at the time of the accident. Also, in response to Farmers' interrogatory no. 15, Sellens confirmed that at the time of the accident Klotz was *operating* the Suburban.

For purposes of the present motion, it is uncontroverted that Klotz was operating the Suburban at the time of the collision.

*Farmers' Compliance with the Statutory Mandate*

We now turn our attention to whether the Farmers' policy meets the mandatory minimum UIM coverage requirements set forth in K.S.A. 40-284(b). This requires us to interpret K.S.A. 40-284(b) and construe the language of the Farmers' policy. See *Tilley v. Allied Property & Cas. Ins. Co.*, 33 Kan. App. 2d 923, 926, 111 P.3d 188, *rev. denied* 280 Kan. 992 (2005). These are issues of law subject to unlimited review. *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 132, 61 P.3d 691 (2003).

This is an issue that was not presented in opposition to the claim by Farmers that it was entitled to judgment as a matter of law. We would ordinarily ignore this issue in our de novo review of the motion. But because enforcement of the UIM provision of Farmers' policy is predicated on the policy provision being consistent with our statutory mandate, we will consider the matter.

K.S.A. 40-284(b) requires every Kansas auto policy to contain, as part of its uninsured motorist provision, a UIM provision

> "which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle."

The purpose of K.S.A. 40-284(b) is "'to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation,'" and "'to provide recompense to

7

innocent persons who are damaged through the wrongful conduct of motorist who because they are uninsured or underinsured and not financially responsible, cannot be made to respond in damages.' [Citations omitted.]" *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 430, 437, 66 P.3d 822 (2003).

The Farmers' policy contains the following UIM provision which permits Sellens to recover benefits to the extent that the coverage limit of $250,000 in his policy with Farmers exceeds the limits of bodily injury coverage carried by the owner or operator who is responsible for the accident:

> "**Coverage C – Uninsured Motorist Coverage**
> "**(Including Underinsured Motorists Protection)**
> "We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an [**underinsured**] **motor vehicle** because of **bodily injury** sustained by the **insured person**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the [**underinsured**] **motor vehicle**."

The words in **bold** in the policy are words that are elsewhere defined in the policy. The Farmers policy defines an underinsured motor vehicle as a motor vehicle "[i]nsured by a **bodily injury** liability bond or policy at the time of the **accident** which provides coverage in amounts less than the limits of liability for this coverage shown in the Declarations."

Sellens presents a rather confusing argument that the Farmers policy does not comply with K.S.A. 40-284(b) because under the Farmers policy, UIM coverage is triggered only when the insured's limits exceed the liability limits of the underinsured vehicle itself rather than the UIM liability limits "carried by the owner or operator" of the vehicle as expressly mandated by K.S.A. 40-284(b). He bases this on the following illustration:

8

"To illustrate, when one applies the requirements of the Policy to the facts of this accident, it produces a different and narrower result than if you apply the plain mandate in K.S.A. 40-284(b). Under the Policy as written, UIM coverage is not available to Mr. Sellens because the limits of his Policy ($250,000) do not exceed the liability limits carried by the vehicle (also $250,000). Conversely, if the Policy is forced to comply with the requirements of K.S.A. 40-284(b), UIM coverage would be triggered if Mr. Sellen[s'] limits ($250,000) exceed the liability limits of the operator of the motor vehicle, KFSE, who has limits of $100,000."

We have previously rejected the notion that KFSE was the operator of the Suburban that struck Sellens' motorcycle. In his response to Farmers' motion for summary judgment, Sellens did not controvert the fact that Klotz was operating the Suburban at the time of the collision. Under the Farmers policy, Farmers agrees to pay "sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an [**underinsured**] motor vehicle."

Klotz bought an auto liability policy from State Farm that covered him personally and the Chevrolet Suburban he owned. He was driving his own insured vehicle at the time of the accident. Klotz' liability coverage was under the same policy and in the same amount as the coverage for the automobile he owned and was operating at the time of the accident. The language of the Farmers policy would not lead to a different result when considering the liability coverage available to Klotz personally under the State Farm policy vis-á-vis the liability coverage under the State Farm policy for his Suburban. The Farmers policy does not violate K.S.A. 40-284(b) so as to bar judgment in favor of Farmers as a matter of law.

*State Farm's Tender of Its Policy Limits on Behalf of Klotz Defeats Sellens' UIM Claim*

Next, Sellens asserts that the $250,000 payment by Klotz' insurer, State Farm, does not preclude UIM coverage in this case, despite the fact that the amount matched the

9

UIM coverage limit in the Farmers policy. Sellens claims that UIM coverage was still available to him under the Farmers policy because "only the liability limits of KFSE can be considered when determining UIM coverage available under the Policy." According to Sellens, the court should ignore the State Farm payment when calculating whether underinsured motorist coverage was triggered.

Sellens relies on *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 811 P.2d 1112 (1991), and *Stafford v. State Farm Mut. Automobile Ins. Co.*, 27 Kan. App. 2d 224, 1 P.3d 924, *rev. denied* 269 Kan. 934 (2000). Sellens claims that Kansas courts have routinely held that "individual policies should be compared separately with the underinsured motorist coverage." 27 Kan. App. 2d 224, Syl. ¶ 3. Neither case supports Sellens' position.

In *Allied*, the Kansas Supreme Court addressed the issue of whether State Farm could add together the total payments from two separate tortfeasors for the purpose of calculating whether the other coverages met or exceeded an insured's UIM coverage limit. 248 Kan. at 730-31. The court found that State Farm's limitation on recovery violated K.S.A. 40-284, stating:

> "The setoff provision here attempts to limit the underinsured motorist coverage mandated by [K.S.A.] 40-284 by deducting the amount received from other persons or organizations who may be legally liable for the bodily injury regardless of whether they trigger the underinsured motorist coverage in this case. Such a setoff provision is not listed within the exclusions or limitations of coverage found at 40-284(e). Therefore, this limitation is void and unenforceable." 248 Kan. at 733.

The *Allied* court held that the two individual tortfeasor payments should be compared separately with the UIM coverage limit. 248 Kan. at 732. In reaching this decision, the Supreme Court noted that the motivation in eliminating setoffs based on payments by separate tortfeasors was due to the elimination of joint and several liability

10

which was replaced by comparative fault and the need to make each tortfeasor responsible for his or her separate share of damages based on his or her percentage of fault. 248 Kan. at 732. The tortfeasors in *Allied* were separately liable for their own distinct negligent conduct. In our present case, there was only the tortious conduct of Klotz, and KFSE's liability is predicated solely on the doctrine of respondeat superior. Further, Farmers did not deny coverage based on adding the payments by State Farm and Liberty Mutual. Instead, it compared the payments individually and found that State Farm's payment made on behalf of Klotz, the owner and operator of the vehicle, matched the UIM coverage limit on Sellens' policy with Farmers. Thus, no underinsured benefits were due.

In *Stafford*, Stafford was killed in a collision between vehicles driven by Morris and Hight, who were both negligent. Morris and Hight each had liability insurance with $25,000 per person limits. Stafford had a policy through State Farm which provided UIM coverage of $50,000 per person. The plaintiffs sought UIM benefits from State Farm of $25,000 for the underinsured Morris and another $25,000 for the underinsured Hight.

State Farm argued that its policy limited the plaintiffs' recovery to $25,000 for both claims—the difference between the $50,000 UIM limit and the individual $25,000 limits held by Morris or Hight. But this court concluded that the individual policies of Morris and Hight should be compared separately with the UIM coverage under the State Farm policy. 27 Kan. App. 2d at 227-28.

Again, KFSE's liability arises from the negligent conduct of Klotz, not some independent act of negligence. *Allied* and *Stafford* are not instructive. They deal with attempts to stack the coverages of separate tortfeasors when determining whether the plaintiff's UIM coverage can be invoked. As we explained in discussing *Allied*, that is not the case here. State Farm paid Sellens $250,000 based on one single applicable policy of insurance which covered both Klotz and the motor vehicle he was driving. This payment

11

matched the UIM benefits available to Sellens under the Farmers' policy. The Liberty Mutual policy was not considered in determining whether the Farmers' UIM provision applied.

Farmers' calculation of coverages was consistent with K.S.A. 40-284(d), which provides:

> "Coverage under the policy shall be limited to the extent that the total limits available cannot exceed the highest limits of any single applicable policy, regardless of the number of policies involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid or vehicles involved in an accident."

Here, the highest limit available under a single policy was the $250,000 which State Farm paid to Sellens on behalf of its insured, Klotz, the owner and operator of the vehicle that struck Sellens' motorcycle. Having collected $250,000 from Klotz' insurer, Klotz is not an underinsured motorist, so Sellens is not now entitled to recover against Farmers, his own insurer, for UIM benefits.

There is no genuine issue of material fact with respect to Farmers' summary judgment motion, and Farmers is entitled to judgment as a matter of law. The district court did not err in so finding.

*Sellens is not Entitled to Attorney Fees*

Finally, Sellens claims that he is entitled to attorney fees under K.S.A. 40-908. This raises a question of law over which we have unlimited review. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The Farmers' policy provided not only auto liability coverage, but also coverage for losses due to fire, tornado, lightning, or hail. K.S.A. 40-908 provides that in all actions in which judgment is rendered against an insurance company on a

"policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as part of the costs . . . ."

Recovery under this statute, of course, is predicated upon the insured party prevailing in a suit against the insurer. Because Farmers has prevailed on the merits, Sellens is not entitled to attorney fees. The district court did not err in refusing to grant attorney fees to Sellens.

Affirmed.